## Case No. 12,535.

SCOTT v. HORE.

[1 Hughes, 163.] [1]

Circuit Court, E. D. Virginia. July, 1875.

PRACTICE IN EQUITY—DECREE BY DEFAULT—NEGLECT OF COUNSEL—REHEARING—FINAL DECREE.

1. A decree taken by default in consequence of the neglect of counsel for the defendant, will not be opened on motion for rehearing.

2. The Virginia law, settled by repeated decisions of the court of appeals, that a rehearing for neglect of counsel will not be granted, and never except on a bill of injunction, is observed

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

in the United States circuit court for this district.

[Cited in Rogers v. Parker, Case No. 12,018.]

3. United States circuit courts have no power to set aside their decrees in equity, on motion, after the term at which they are rendered.

4. The eighty-eighth rule in equity, forbidding a United States circuit court, on motion, to grant a rehearing, after the term, of final decrees to which appeal lies to the supreme court, is imperative.

[Cited in Glenn v. Dimmock, 43 Fed. 551.]

5. What is a final decree?

[Cited in Knox v. Columbia Liberty Iron Co., 42 Fed. 379.]

In equity.

Some time previously to 1849, Richard M. Scott, of Stafford county, Virginia, devised his St. Marysville plantation in that county to trustees for the benefit of his eldest son during his life; and after his death, to Eliza Scott, wife of the devisor, for her life; charging the estate with a small annual rent per annum for the benefit of his heirs. He afterwards died. The son also died, leaving Virginia Scott his widow, and a son, Richard M. Scott, Jr. This Richard M. Scott, Jr., in the course of time, August, 1850, made a contract (called a lease by the contracting parties) with his grandmother, Eliza Scott, by which he covenanted and agreed to pay her an annuity of $700 (called rent by the parties) for the surrender of her life interest in St. Marysville. This contract was in writing in the nature of an agreement, and the Virginia court of appeals, in passing afterwards upon the transaction, decided that "though the instrument was called a lease, and the sum reserved was called a rent, the contract was a surrender, and the life estate of Eliza Scott was merged in the estate of Richard M. Scott, Jr.;" and furthermore, that "the instrument not being under seal, it was not an express surrender, but it was a contract for a surrender which was carried out by the parties, by the delivery of possession and the payment of money under it, and it therefore had all the legal effect of an express surrender by deceased." The acting trustee as party to this contract was afterwards relieved by the court from service under it. After the making of this contract, and the delivery of possession to Richard M. Scott, Jr., this Scott died, and his estate passed to his mother, Virginia Scott, his executrix. In the year 1870, Virginia Scott, who seems to have had possession and full title to the land (charged, it may be, with the covenants of Richard M. Scott, her testator, from whom she probably inherited as heir), without express notice to the grantee, sold or conveyed by deed of bargain and sale to Elias A. W. Hore the St. Marysville plantation. During the Civil War of 1861–65, the records of Stafford county were burnt or destroyed, and there was probably no record notice to Hore of the title of St. Marysville, or of the charge running with the land (if it were such) which had been fixed upon this estate by the covenant of Richard M. Scott, Jr. Hore has remained in possession ever since, and is still in possession. In the fall of 1873, Mrs. Elizabeth D. Scott, having become a resident of Indiana, filed her bill in chancery against Hore in this court at Richmond, setting forth the facts, some of which have been recited, and praying that Hore the holder of the land, should be required to pay to her such of the $700 annuities as were in arrear (some three or four of them), and be decreed to pay the future annuities as they should become due. On being served with process, Hore went to Richmond, and employed counsel for his defence, but there is no allegation that he furnished his counsel with his grounds of defence. At the December rules, 1873, there was a rule nisi. At the January rules, 1874, there was an entry pro confesso; and at the spring term of the court, on the 9th of April, which was the fifth day of the term, no answer having been filed, and no defence been made, and no counsel marked for Hore on the docket, a decree was taken by default. This decree was a full adjudication of all the principles of law involved in the case, and a careful provision for all the contingencies that might arise in the course of executing it. It decreed against Hore to Mrs. Scott the annuities that were in arrear, directed that execution might issue for the amount; decreed that the future annuities should be paid as they should accrue; and provided that if the execution which it directed to issue should be returned no effects, then the land should be sold. In such event the decree appointed a commissioner to make sale, and prescribed all the proper rules and conditions which he should observe in making the sale. It furthermore adjudged costs to the complainant, and declared expressly that it was a final decree. No notice was taken of this decree by Hore during the spring term, 1874, of the court. No notice was taken of it by him during the regular session of the fall term of the court, in October, 1874. But at an adjourned term held for special purposes, in 1875, at Richmond, the defendant, Hore, by counsel, moved the court for a rehearing of the cause, on the ground that his counsel had neglected to make defence. At another adjourned term of the court, held at Alexandria, May 17, 1875, the motion was argued, and a paper filed informally in the nature of an answer to the original bill of Mrs. Eliza Scott.

HUGHES, District Judge. I am to decide, upon the foregoing facts, whether this motion for a rehearing of the cause can be granted, and whether the decree of this court, entered on the 9th of April, 1874, can be set aside on such motion. I think it is now settled law in Virginia, notwithstanding the remarks of the court in 9 Leigh, 289, on the case of Patterson v. Campbell, never reported, that a judgment or decree, rendered

by default, cannot be opened on the ground of the negligence of counsel. In Hill v. Bowyer, 18 Grat. 382–386, the court of appeals says: "A defendant upon whom process has been served, who wholly neglects his defence, or contents himself with employing a lawyer who practices in the court to defend him without giving any information about his defence, or inquiring whether he is attending to the case, is not entitled to relief on the ground of surprise, however grossly unjust the decree may be." For other decisions of the court on this point, see 9 Leigh, 478, 10 Grat. 506, 22 Grat. 136, and Wallace v. Richmond [26 Grat. 67]. It is also to be gathered from these cases that the proceeding proper to be employed in applications for opening judgments or decrees taken on default through negligence of counsel, is not that by motion for a rehearing, but by bill in chancery. Under the Virginia law, this application by motion cannot be sustained at all; and the decisions are against it even though made by bill.

If this motion depended alone upon the law as settled in Virginia for the courts of the state, I should feel bound to deny it on the grounds—1st. That negligence of counsel is in Virginia no ground for opening a judgment or decree; and, 2d. That even though in extreme cases it be so, yet the proper mode of proceeding for defendant is by bill of injunction and not by motion. But behind these reasons, which forbid a rehearing of this case, on motion, there is another objection to it more insurmountable than the rest. The eighty-eighth rule of the supreme court of the United States, prescribed for proceedings in chancery in the inferior courts, forbids the rehearing of a cause after the term at which the final decree of the court shall have been entered and rendered, if an appeal lies to the supreme court. The spring term and the fall term for 1874 of this court had both passed before this motion was entered. The general decisions of the courts of England and the States of America, many of which have been cited in argument, can have no force in this court in opposition to such a rule. We are bound here by rule 88. The very fact of there having been a diversity of rulings on this subject by other courts, was probably the inducement which led the supreme court to lay down its rule 88. That rule is the law here, whatever may be the rulings of other courts of the highest authority on this subject. The supreme court has not only laid down its rule 88, but in the cases of Cameron v. McRoberts, 3 Wheat. [16 U. S.] 591, and McMicken v. Perrin, 18 How. [59 U. S.] 507, it has construed that rule and decided that circuit courts have no power to set aside their decrees in equity, on motion, after the term at which they are rendered. If the decree of 9th April, 1874, was a final decree, and if an appeal lies from it to the supreme court, then I am not at liberty to grant a rehearing. If it is a final decree, then an appeal does lie to the supreme court, because the amount involved exceeds two thousand dollars, the sum then requisite to give jurisdiction of an appeal to that court. The only inquiry therefore is, whether the decree in question was a final decree.

It has been truly said in argument that there are two classes of decisions by appellate courts with reference to this character of finality in decrees: 1st, those in which it is necessary to determine whether an appeal lies; and 2d, those in which a limitation of time for an appeal cuts off the right. In the first class of cases the courts go farther to construe a decree as final than they do in the last class of cases; in each class aiming to preserve to the suitor this valuable right. A court will, when no limitation of time occurs, strain a point to treat a decree as final from which an appeal has been taken; and in the other case it will strain a point to treat a decree as not final where an appeal would be cut off by limitation. Hence has arisen a diversity of decisions on this question, all made in the interest of the suitor's right of appeal. I admit the difficulty of defining a final decree in such precise terms as will hold good in all cases. I have been in the habit of thinking those decrees to be final which determine all the principles of law and equity arising in a case, and which give direction for carrying the principles so decided into execution. If decrees which are made after all evidence is taken, and full and final argument heard, and which determine all questions raised, do not go on to provide for carrying into complete execution the principles decided, they are in that respect defective. They are final decrees, though as such they may be defective in their ministerial parts. The supreme court of the United States has not unfrequently complained of district and circuit courts for not entering complete final decrees, and of their carrying into execution by piecemeal decisions which finally settle all questions arising in causes. The difficulty of defining what are final decrees has arisen chiefly from the fact that decrees really final in character have been defective in providing fully for the ministerial measures to be taken by officers of the court in carrying them into execution. Of course it would be exceedingly empirical to hold that a final decree is the order entered last in point of time, in a cause. A final decree is one which finally adjudicates the questions of right and of law involved in a cause, and proceeds to provide with reasonable completeness for the execution of such measures as may be necessary and proper for placing successful suitors in possession of the rights decreed to them.

The decree now under consideration is final, in my judgment, not only in its express terms, but in its subject-matter. Being a final decree, and one from which an appeal may be taken to the supreme court, it can-

not be opened now on a motion for rehearing The only possible method by which it can be re-examined in this court is upon bill of review. If such a bill is not brought, there is no way of staying the execution of it other than by appeal.

The motion of the defendant is denied.